The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>JUSTIN BAKER,<br><br>Defendant. | NO. CR24-058<br><br>UNITED STATES' TRIAL BRIEF |

## I. INTRODUCTION

On March 27, 2024, the grand jury returned an Indictment charging Justin Baker with one count of Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1). Dkt. 8. The grand jury superseded this indictment on October 1, 2024. Dkt. 42. Specifically, Baker is charged with touching the groin, genitalia, breast, and buttocks of an 18-year-old victim while the victim and Baker were aboard an aircraft traveling to the Seattle-Tacoma International Airport. *Id.* Baker's trial is scheduled to begin on October 21, 2024, before this Court. The government anticipates that trial will last three to four days. The government expects to call approximately thirteen witnesses. This trial brief is intended to provide the Court with

United States' Trial Brief - 1
*United States v. Justin Baker* , CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a summary of the facts of the case, the elements of the charge, and evidentiary issues that the government anticipates may arise at trial.

## II.     FACTUAL SUMMARY

On March 14, 2024, Baker was traveling from Burbank, California to Seattle, Washington on an early morning flight on Alaska Airlines. Baker—a 41-year-old male—was seated in the middle seat of a row. To his left was a middle-aged man from China, Mr. Li. To his right, in the window seat, was an 18-year-old female, Adult Victim 1 ("AV1"). Baker engaged AV1 in small talk during the beginning portion of the flight. AV1 told Baker that she was starting college in the fall and had been taking online courses in the meantime. Baker told AV1 that he was a pastor and married with children.

Midflight, Baker asked AV1 if she had reception on her cell phone, claiming he did not. Baker showed his phone to AV1, purportedly to show he had no service; in reality, Baker had a "sext" conversation illuminated on his phone. The text was between Baker and his wife and detailed explicit sexual acts. Baker then placed his cell phone on his leg, with the same explicit conversation still illuminated. This made AV1 uncomfortable. She turned to face the window of the plane to try and avoid further interaction with Baker. When AV1 did not react, Baker began leaning over AV1. Baker acted as if he was interested in looking out the window, but really was moving closer to AV1. Baker asked AV1 if she wanted to hang out during the layover. AV1 declined. Baker told AV1 that he had a nice hotel room in Seattle, and asked if AV1 if she would accompany him to the hotel, and assured AV1 that he would return her to the airport afterwards. Again, AV1 declined.

Baker next tested touching AV1. He began by intentionally bumping his right leg into AV1's left leg. Baker apologized, pretending it was an accident. Baker placed his hand on his right leg and again began bumping AV1's left leg, intentionally causing his hand to touch her leg. AV1 tried to move her legs closer to the window and further away from Baker. Baker, still with his right hand on his leg, again bumped AV1's left leg, and

United States' Trial Brief - 2
*United States v. Justin Baker* , CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

intentionally moved his hand from his leg to the top of AV1's leg. Baker removed his hand, pretended this was accidental, and apologized.

Baker's touching of AV1 continued to escalate. Baker lifted the arm rest up between his seat and AV1's seat, took off his jacket, and draped his jacket over his lap and AV1's lap so that both of their laps were covered and not visible to others. AV1 froze out of fear. Baker placed his hands under the jacket and ran his right hand up and down AV1's left thigh without AV1's consent. Baker then moved his hand to touch AV1's vagina over her clothing. AV1 did not give Baker permission to touch her. Baker began rubbing his fingers in a circular motion against AV1's vagina without her consent. Baker attempted to penetrate AV1's vagina with his fingers but could not do so because of the thickness of her clothing. This lasted for a few minutes. Baker then leaned over AV1, again pretending to look out the window, and grabbed AV1's breast multiple time, saying she was "so hot."

AV1 tried to remain calm but was frozen in fear. Around this time, the pilot announced the plane was preparing for landing and that it was the last opportunity to use the lavatory. AV1 told Baker she needed to use the restroom as a ruse to get away from him. As AV1 was leaving the row, Baker blocked AV1 and wrapped his arms around her waist, grabbing AV1's buttocks without her consent. Baker told AV1 that she was "so sexy" while grabbing her. AV1 pushed Baker's arms off her. Baker and the individual sitting in the aisle seat got up and let AV1 exit the row. AV1 walked directly from her seat to the flight attendant station to report the incident. Crew members described AV1 as crying, in a state of shock, and quivering. The flight crew notified authorities at the airport.

When the flight landed, law enforcement interviewed AV1, Baker, the flight attendants, and the individual sitting in the aisle seat of the same row, Mr. Li. Mr. Baker admitted to law enforcement that he touched AV1's vagina, breast, and buttocks, but claimed that it was consensual.

Following the Indictment in this case, Baker told his mother-in-law that he was the victim of the sexual assault, not AV1. Later, Baker admitted to much of the alleged

United States' Trial Brief - 3
United States v. Justin Baker, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

touching to his mother-in-law—admitting that he instigated the touching and touched AV1's genitalia, among other admissions—and provided further detail about the incident. Baker also told his mother-in-law that he is attracted to teenage girls, including AV1. Baker told his mother-in-law that his touching of AV1 was consensual because AV1 "never said no" and she allowed Baker to touch her.

### III. CHARGES

Baker is charged in Count One with Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(b) and Title 49 United States Code, Section 46506(1). For the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

> First, the defendant knowingly had sexual contact with Adult Victim 1;
>
> Second, the sexual contact was without Adult Victim 1's permission; and
>
> Third, the offense was committed while aboard an aircraft in flight within the special aircraft jurisdiction of the United States.

Ninth Circuit Model Jury Instructions 20.17 (2022 Edition).

In this case, "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, groin, breast, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. *See* 18 U.S.C. § 2246(3) (modified to mirror Superseding Indictment).

"Special aircraft jurisdiction of the United States" also includes an aircraft in flight in the United States. 49 U.S.C. § 46501(2)(A). "In flight" means an aircraft from the moment all external doors are closed following boarding through the moment when one external door is opened to allow passengers to leave the aircraft. 49 U.S.C. § 46501(1).

### IV. ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

#### A. Witnesses

The government will separately file its list of intended witnesses. The witnesses are not listed in the order in which the government intends to call them. The government will

United States' Trial Brief - 4
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

provide the defense a list of the witnesses it expects to call the day prior to their anticipated testimony. Additionally, depending on the presentation of evidence during the trial, the government may not call each witness identified in the government's witness list.

The government intends to present testimony from a witness located in Shanghai, China. The defense agreed to allow that witness to testify remotely via videoconference and waived his right to physically confront the witness at trial. Dkt. 45. The Court subsequently granted a stipulated motion permitting the remote testimony. Dkt. 46.

### B. Statements of the Defendant

The government may introduce evidence regarding statements made by Baker, including statements made to AV1, law enforcement, and Baker's mother-in-law after the instant charges were initiated.

Statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). An out-of-court statement of a declarant offered by the declarant on his own behalf, however, is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-exculpatory statements because such statements "are exactly the ones which people are most likely to make even when they are false").

Before a court may introduce statements made by a suspect in custody and under interrogation, "[t]he government has the burden of proving that the defendant has knowingly and voluntarily waived his *Miranda* rights." *United States v. Heldt*, 745 F.2d 1275, 1277 (9th Cir. 1984). "[A] waiver may be implied where warranted under the facts of a particular case." *United States v. Hilliker*, 436 F.2d 101, 102 (9th Cir. 1970). Notably, being briefly detained is not the same as being in custody, even though detained persons are not free to leave or to refuse to be searched. *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001). Here, Baker was detained at the gate upon deplaning. His detention continued as he was transferred to an interview room for further questioning. Baker was

United States' Trial Brief - 5
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

read his *Miranda* rights in both settings by different members of law enforcement. In both instances, Baker made a knowing and voluntary waiver of his *Miranda* rights.

Baker is not entitled to offer his own hearsay statements. Federal Rule of Evidence 801(d)(2) is unavailable to Baker because he is the proponent of the evidence and, where he seeks to introduce it, it is not offered against him. *See Ortega*, 203 F.3d at 682; *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). As a result, the hearsay rule would bar Baker from introducing evidence of his own prior statements. *United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007). Thus, if the government chooses not to offer Baker's prior statements, Baker may not offer them.

If the government does choose to offer Baker's prior statements, Baker may not offer any additional prior statements. The only exception to this reality is if Baker can demonstrate that the government's proposed offering would lead to a "misunderstanding or distortion," in which case, Baker can ask the Court to admit an additional portion of the prior statement that is necessary to avert the misunderstanding. *United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996). This is a very limited exception and does not permit a defendant to offer separate claims that he simply wishes to introduce without subjecting himself to cross-examination.

### C. Defendant's Character

Neither Baker's character nor any trait of his character is an essential element of the crimes charged in the Superseding Indictment. Thus, the defense may not introduce any evidence of specific instances of conduct (e.g. awards, commendations, lack of previous sex offense charges) that would reflect favorably on the Defendant's character. *See* Fed. R. Evid. 405(b).

If Baker attempts to call a character witness or otherwise introduce character evidence, including through Baker's own testimony, the government may seek to introduce otherwise inadmissible evidence about Baker's character or prior bad acts. Under Federal Rule of Evidence 404(a)(1), character evidence is admissible when offered by the

United States' Trial Brief - 6
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prosecution to rebut "[e]vidence of a pertinent trait of character offered by an accused." "[W]hen the defendant 'opens the door' to testimony about an issue by raising it for the first time himself, he cannot complain about subsequent government inquiry into that issue." *United States v. Hegwood*, 977 F.2d 492, 496 (9th Cir. 1992); *see United States v. Mendoza-Prado*, 314 F.3d 1099, 1105 (9th Cir. 2002) (affirming district court's decision to allow government's evidence of prior bad acts to demonstrate bad character where defendant testified that he "was a family man who was busy providing for his family" and therefore lacked interest in dealing cocaine).

### D. Excited Utterances of Adult Victim 1

The government intends to introduce into evidence statements made by AV1 to others aboard the airplane after she was touched by Baker. AV1's statements shortly after the assault are admissible as excited utterances under Fed. R. Evid. 803(2). Rule 803(2) asserts that statements relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused, are not excluded by the rule against hearsay. In determining whether a statement constitutes an excited utterance under the exceptions to hearsay rule, "[r]ather than focusing solely on the time a statement was made, [courts] consider other factors, including the age of the declarant, the characteristics of the event and the subject matter of the statements." *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995). The lapse of time between the startling event and the out-of-court statement is not dispositive. *Id*. The evidentiary rationale for permitting hearsay testimony regarding excited utterances is that they "are made in contexts that provide substantial guarantees of their trustworthiness." *White v. Illinois*, 502 U.S. 346, 355 (1992). They are also particularly probative because "[a] statement that has been offered in a moment of excitement—without the opportunity to reflect on the consequences of one's exclamation—may justifiably carry more weight with a trier of fact than a similar statement offered in the relative calm of the courtroom." *Id*. at 356.

In this case, shortly after experiencing Baker's unwanted touching, 18-year-old

United States' Trial Brief - 7
*United States v. Justin Baker* , CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

AV1 left her row and immediately sought help from the flight attendants onboard to tell them what happened. The flight attendants observed that AV1 was in shock, shaking, and crying—visibly under the stress of the startling event—at the time she made these various statements. AV1's disclosures are admissible under Fed. R. Evid. 803(2).

### E. Statements Offered for a Non-Hearsay Purpose

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The admission of hearsay into evidence is generally prohibited by Federal Rule of Evidence 802. However, statements not offered for their truth are not hearsay. Fed. R. Evid. 801(c). Thus, when it is relevant that an out-of-court statement was made and the statement is offered exclusively to prove that it was in fact made, it is not hearsay, and is therefore admissible. *See id.*, Fed. R. Evid. 401.

In certain instances, the government may offer out-of-court statements not to prove the truth of the matters asserted, but merely to explain information possessed by, and the subsequent actions of, the investigative agents, law enforcement officers, and other witnesses. Furthermore, additional out-of-court statements provide necessary context to comprehend the admissible statements of the defendant and others. Because these statements will not be offered for the truth of the matter asserted, the statements would not constitute hearsay as defined by Rule 801(c). *See United States v. Mitchell*, 502 F.3d 931, 966 (9th Cir. 2007) (no error in allowing investigator to testify about out-of-court statements from an informant that caused him to go to a certain location); *see also United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991) (out-of-court statement is not hearsay if offered for the limited purpose of explaining why a police investigation was undertaken).

### F. Demonstration of Acts

The government may seek the Court's permission to permit the victim, AV1, to sit in a chair in the well in front of the jury (or wherever directed by the Court) for a limited

United States' Trial Brief - 8
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

portion of her testimony so that she may demonstrate to the jurors how Baker touched her.

Demonstrating exactly where AV1 was touched is necessary to establish the first element of the crime charged, Abusive Sexual Contact, namely that Baker knowingly had sexual contact with AV1. The term "sexual contact" is statutorily defined, in part, as the "intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person . . . ." 18 U.S.C. § 2246(3). Here, it is alleged that Baker desensitized AV1 by touching her knee and leg and then eventually touching her groin and genitalia, grabbing her breast, and touching her buttocks. If AV1 is limited to testifying from the witness stand, jurors will be unable to observe her body while she is seated. However, AV1's demonstration in the well will allow jurors to see the acts alleged. Further, a physical demonstration by AV1 can demonstrate with precision what parts of her body Baker touched without her permission.

### G. Prior Consistent Statements

Should the defense seek to impugn AV1's credibility at trial by, for instance, claiming she consented to Baker's touching or is otherwise being untruthful on the stand, the government may seek to introduce AV1's prior consistent statements for their truth, pursuant to Federal Rule of Evidence 801(d)(1)(B)(i) and (ii). A witness's prior statement is not hearsay if the statement "is consistent with the declarant's testimony and is offered" *either* "(i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying" *or* "(ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B).

Under the pre-2014 version of Rule 801(d)(1)(B)—the current rule's subsection (i)—"there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony," and "the prior consistent statement must be made prior to the time that the supposed motive to falsify arose." *United States v. Collicott*, 92 F.3d 973, 979 (9th Cir. 1996).

United States' Trial Brief - 9
United States v. Justin Baker, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The Ninth Circuit established a four-element test to admit prior consistent statements under Rule 801(d)(1)(B)(i): (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *United States v. Chang Da Liu*, 538 F.3d 1078, 1086 (9th Cir. 2008). The prior consistent statement may also be introduced through a witness other than the declarant. *United States v. Green*, 258 F.3d 683, 692 (7th Cir. 2001).

However, subsection (ii) was added in 2014 "to extend substantive effect to consistent statements that rebut other attacks on a witness—such as the charges of inconsistency or faulty memory." Fed. R. Evid. 801, Advisory Committee Note to 2014 Amendment. "The 2014 amendment changed the landscape," and a "rehabilitative use now provides a gateway to across-the-board admissibility, both as a response to a general credibility attack and as substantive evidence of guilt." *United States v. Begay*, __ F.4th __, 2024 WL 4129017, at *3 (8th Cir. 2024) (citations omitted); *see also United States v. Lacerda*, 958 F.3d 196, 214 n.4 (3d Cir. 2020) (rule was "broadly expanded in 2014"); *United States v. Purcell*, 967 F.3d 159, 196 (2d Cir. 2020) (subsection (ii) "expands the purposes for which prior consistent statements may be offered"); *United States v. Flores*, 945 F.3d 687, 705 (2d Cir. 2019) (admitting prior consistent statement where defendant argued that the witness could not be trusted because the incident occurred long ago).

Subsection (ii) thus allows for the "substantive admissibility of consistent statements that are probative to explain what otherwise appears to be an inconsistency in the witness's testimony." Fed. R. Evid. 801, Advisory Committee Note to 2014 Amendment. And subsection (i)'s "pre-motive-statement requirement" does not extend to subsection (ii). *Begay*, __ F.4th __, 2024 WL 4129017, at *4.

United States' Trial Brief - 10
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Plus, under either subsection of the rule, "a prior consistent statement need not be identical in every detail to the declarant's . . . testimony at trial" because "[i]nevitably, witnesses' recollections of past events will diverge." *United States v. Vest*, 842 F.2d 1319, 1329 (1st Cir. 1988); *see e.g. United States v. Kootswatewa*, 893 F.3d 1127 (9th Cir. 2018).

In this case, the defense may attempt to attack AV1's credibility during cross-examination. If that occurs, the government should be permitted to rehabilitate AV1's credibility through her prior statements under the applicable subpart of Rule 801(d)(1)(B). This rehabilitation could be through the testimony of witnesses and/or recordings of the statements. For instance, AV1's prior statements to the flight attendants while onboard the flight, to law enforcement upon landing, or to law enforcement weeks later during her interview all may constitute prior consistent statements. The probative value of AV1's prior statements outweigh any danger of unfair prejudice. *See United States v. Payne,* 944 F.2d 1458, 1471 (9th Cir. 1991) (prior consistent statements had "significant probative force bearing on credibility apart from mere repetition" because the statements "demonstrated that [the witness] had repeated certain aspects of her story . . . ."). The government will raise this issue with the Court for a ruling prior to attempting to admit any prior consistent statements.

**H. Business Records**

The government will offer into evidence limited business records of Alaska Airlines, including a flight manifest and diagram. The business record exception allows a record to be admitted if it is made at or near the time of the events set forth therein, by a person with knowledge, and is kept in the course of regularly conducted business activity, if it is the regular practice of the business to make the record. Fed. R. Evid. 803(6). Any person familiar with the business record-keeping practices of the business who can identify the record at issue as having been made in the ordinary course of business is a sufficient foundational witness; personal knowledge of the document is not required and does not affect its admissibility. *See United States v. Pitman*, 475 F.2d 1335, 1337 (9th Cir. 1973);

United States' Trial Brief - 11
*United States v. Justin Baker* , CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*see also United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993) (the phrase "other qualified witness" is broadly interpreted to require "only that the witness understand the record-keeping system" at the particular business). Similarly, a record generated by a third party and received and relied upon in the ordinary course of business, such as an invoice, becomes a business record of the company relying upon it. *See Childs*, 5 F.3d at 1333–34. Incompleteness, ambiguities, and inaccuracies in records go to the weight to be given the evidence, not to its admissibility. *See United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

Copies of the records and custodian certifications have been produced through discovery, as has written notice of the government's intent to introduce such records; in particular, written notification of the government's intent to rely upon records and custodian certifications was sent to Baker in advance of trial. Absent objection from the defense, the records are admissible under Fed. R. Evid. 902(11).

### I. Stipulations

The government and the defense have not agreed to any stipulations in this matter.

### J. Admissibility of Photographs, Video, and Audio

AV1, flight attendants, and the individual sitting in the aisle seat next to Baker were all interviewed by law enforcement, including the FBI and the Port of Seattle Police Department, following the alleged sexual contact. Many of these interviews were audio and video recorded and written transcripts were subsequently prepared.

The government does not intend to introduce the recordings or transcripts as direct evidence during its case-in-chief. These interviews could, however, become relevant and admissible, in whole or in part, depending on how the defense cross-examines the witnesses or the statements made by defense counsel during opening statement. For instance, the videos may be admissible if the defense expressly or implicitly suggests that the victim or another witness fabricated their testimony, or to rehabilitate the victim or another witness' credibility on another ground. Under these circumstances, these recordings could be used

United States' Trial Brief - 12
*United States v. Justin Baker* , CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

as evidence of a prior consistent statement pursuant to Federal Rule of Evidence 801(d)(1)(B), as addressed more fully above. *See United States v. Payne*, 944 F.2d 1458, 1470-71 (9th Cir. 1991); *Tome v. United States,* 115 S. Ct. 696 (1995).

The government may also introduce audio clips of Baker's prior statements, as discussed above. Such videos, photos, and audio are admissible if they accurately depict the scene or capture the recorded event. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir. 1980) (evidence that photographs accurately depict scene provides sufficient foundation for admission under FRE 901(a)).

### K. Presence of Case Agent During Trial

Federal Rule of Evidence 615 provides that witnesses should be excluded so that they cannot hear other witnesses' testimony. The rule does not authorize exclusion of "an officer or employee of a party which is not a natural person designated as its representative by its attorney," or "a person whose presence is shown by a party to be essential to the presentation of the party's cause." Fed. R. Evid. 615. The United States designates FBI Special Agent Brian Crist, the case agent who had primary investigatory responsibility for this case, as its representative party and requests that he be exempt from exclusion. A case agent is properly exempted from Rule 615 as an officer for the government. *See United States v. Thomas*, 835 F.2d 219, 223 (9th Cir. 1987) (permitting agent to be present during trial as "officer for the government" even though he was called as a witness); *see also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984) (same).

### L. Recalling Law Enforcement Witnesses and Interrupting Witnesses

The government requests leave to re-call law enforcement witnesses during the course of the trial. First, the government may call the case agent to the stand on more than one occasion to introduce evidence. The government will, of course, attempt to limit the extent to which it is necessary to recall witnesses. In any event, the government does not foresee any potential for prejudice to the defendant through this procedure.

United States' Trial Brief - 13
*United States v. Justin Baker* , CR24-058 JCC

**M. Evidence of Defendant's Attraction to Teenagers**

The government anticipates introducing evidence of Baker's admitted attraction to teenage girls, including AV1, through specific statements that he made to his mother-in-law after this case was filed. This evidence is relevant to the charge contained in the Superseding Indictment because it helps prove that Baker's touching of AV1 was done with the "intent to . . . arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3) (defining "sexual contact" as used in 18 U.S.C. § 2244(b)). This evidence also undercuts the reasonableness of Baker's anticipated defense that the sexual contact with AV1 was consensual. Further, such evidence contradicts Baker's prior statements that AV1 sexually assaulted him.

This evidence has become increasingly relevant given the defense's argument for a lesser included charge of simple assault, which implies that Baker's nonconsensual touching of AV1 was done with nonsexual intent. Evidence of Baker's attraction to teenage girls speaks to his intention to have a sexual encounter with one while onboard the Alaska Airlines flight.

Additionally, this evidence refutes any claim by Baker that the touching was incidental and not sexual in nature as would be required for the lesser included instruction that Baker proposes. *See Proposed Final Jury Instruction 10 (disputed).*

**N. Defendant's Prior Sexual Assault Evidence**

The government will introduce evidence of Baker's prior sexual assault pursuant to Federal Rule of Evidence 413 and the Court's September 30, 2024 Order. *See* Dkt. 41. The government anticipates calling the victim from the prior sexual assault and the police officer who investigated the prior sexual assault. This evidence is admissible for the reasons identified in the Court's Order. *Id.*

**O. AV1's Prior Sexual History Inadmissible**

Pursuant to Rule 412 of the Federal Rules of Evidence, evidence offered to prove that a victim engaged in other sexual behavior or evidence offered to prove a victim's

United States' Trial Brief - 14
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sexual predisposition is generally not admissible in a criminal proceeding involving alleged sexual misconduct. The defense has not noticed an intent to inquire into AV1's sexual history, as required by the rule, nor would specific instances of any sexual behavior fall within any of the exceptions to the rule. *See* Fed. R. Evid. 412(b)(1)(A)-(C).

## V. POSSIBLE DEFENSES

The Defendant has not given notice of any defense for which the Federal Rules of Criminal Procedure require notice. Therefore, the government moves to bar any such defense if it were raised during trial.

## VI. RECIPROCAL DISCOVERY

To date, the government has provided over 1,000 pages of discovery to the defense, including documents, law enforcement reports, memoranda, video- and audio-recorded interviews, emails, and text messages. The government has requested reciprocal discovery from the defense on more than one occasion. As of the date of the filing of this memorandum, the United States has received a single document from the defense—a transcript of an interview that the government produced. The government renews its motion for reciprocal discovery at this time, and if the government is not afforded adequate time to review the defense's discovery, the government will seek to exclude any offered during trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure

## VII. CONCLUSION

This trial brief has been prepared to acquaint the Court with the legal and factual issues that may arise at trial. The United States is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the government requests the opportunity to address those issues by way of a supplemental brief or briefs.

//
//
//

United States' Trial Brief - 15
United States v. Justin Baker, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DATED this 7th day of October, 2024.

Respectfully submitted,

TESSA M. GORMAN
United States Attorney

*s/ Grace W. Zoller*
GRACE W. ZOLLER
KRISTINE FOERSTER
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:  (206) 553-7970
Fax:             (206) 553-0582
E-mail:         grace.zoller@usdoj.gov
E-mail:         kristine.foerster@usdoj.gov

United States' Trial Brief - 16
*United States v. Justin Baker*, CR24-058 JCC

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970