THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR24-058-JCC |
| Plaintiff, | ) | |
| v. | ) | DEFENSE SENTENCING MEMORANDUM |
| JUSTIN BAKER, | ) | |
| Defendant. | ) | |

Justin Baker, through counsel, presents this sentencing memorandum in support of the following sentencing recommendation based on a Zone B guideline range of 6 to 12 months. Because Mr. Baker's range falls within Zone B of the USSG Sentencing Table, the Sentencing Guidelines afford Mr. Baker alternative confinement to imprisonment, such as home confinement. Accordingly, the defense recommends a six-month sentence where Mr. Baker serves four months of imprisonment followed by a special condition of supervised release requiring two months of home confinement.

Once released from custody, Mr. Baker will register as a sex offender for 15 years with an opportunity to petition for early removal after 10 years, so long as there are no violations. Finally, the defense agrees that five years of supervised release would be appropriate.

I.      BACKGROUND

Justin Baker is before this court facing his very first criminal judgment. At the age of 42, and being a father of three young children, he now faces judgment for his

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

conduct on March 14, 2024. In his letter to the court, Mr. Baker offers his sincere apologies to E.C., the victim in this case, while also appreciating the punishment he has experienced thus far for his actions. Ex. 1.

Prior to his arrest, Mr. Baker had a promising career working in the field of alumni affairs at Pitzer College in Southern California. He had a stable family, raising three young kids. And he developed a strong network in his community that involved activities with his church together with coaching volleyball. In fact, Mr. Baker always found himself busy with activities while maintaining a strong work ethic throughout his 21 years of professional employment. At the same time, he made it a priority to be an attentive father who was always present for his kids and their activities. In all, Mr. Baker was living a modest yet comfortable life in the Los Angeles suburbs until March 14, 2024.

Following his arrest, and long before trial, Mr. Baker experienced the punishment for his actions. Prior to trial, while Mr. Baker was on pre-trial release, his wife of 17 years filed for divorce and sought full custody of their children. During the time of his pre-trial release, Mr. Baker was still employed and kept himself busy while living with his parents in their home. He decided to enter into therapy to focus on his mental health and, equally important, on ways to address his own compulsions and mental addictions. In treatment, he found a solid group of support that certainly played a key role in his success on pre-trial release.

The trial was short and immediately following the jury verdict, Mr. Baker was remanded into custody. Since his kids live in Southern California, he has not seen them for the past four months after being taken into custody. Additionally, Pitzer College terminated his employment because of the conviction. Finally, Mr. Baker will have to live with the stigma of his conviction, presumably for the rest of his life, particularly now that he has been convicted of an offense requiring sex offender registration. For

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

someone with no criminal history, this is all significant punishment that will leave an impression on Mr. Baker for the rest of his life.

While sex offenses are without dispute very serious, we cannot lose sight of the fact that not all such offenses are weighted equally. Mr. Baker was charged with, and convicted of, abusive sexual contact on an aircraft which is a Class E felony carrying a maximum sentence of two years. According to Probation's sentencing guideline calculations, which the defense agrees with, Mr. Baker's range falls within Zone B of the sentencing table—being a Zone that would typically result in sentences of alternative confinement such as home detention. In other words, Mr. Baker's crime of conviction is arguably amongst the lowest level "sex offense" crimes in the United States Code. For the reasons presented below, a sentence above the guidelines, let alone a sentence of 24 months, being the statutory maximum, would be disproportionate to any other sentence for similarly situated cases.

## II.  THE UNITED STATES SENTENCING GUIDELINES

The defense agrees with Probation's guideline calculations. Specifically, Mr. Baker meets the criteria for the Zero Point Offender reduction because the offense conduct occurred before the Sentencing Commission modified the criteria in November of 2024. Prior to the November 1, 2024, amendments, the only sex offenses that would disqualify a defendant from the Zero Point Offender reduction would be sex offenses against minors. USSG § 4C1.1 (*see definitions and additional considerations*, 2023 edition). Effective November 1, 2024, the commission made no distinction between sex offenses against minors versus those offenses committed against adults (*see definitions and additional considerations*, November 2024 edition). Because Mr. Baker would benefit from the definition of a "sex offense" that existed at the time of the offense conduct, application of the current guidelines would violate *ex post facto*. *See* USSG § 1B1.11(b)(1). Accordingly, since the victim in this case was an adult at the time of the

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 3

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

offense, Mr. Baker's conviction would not be considered a sex offense under USSG § 4C1.1 in effect at the time of the offense conduct.

The government still objects to the application of the Zero Point Offender reduction asserting that the instant offense involved "violence" thereby disqualifying Mr. Baker under USSG §4C1.1. *See Gov't objections addendum in final Pre-Sentence Report*. However, the government's position relies on cases that interpret "violent felony" as defined by statute and the Sentencing Guidelines with crimes of conviction involving an element of force. Here, USSG § 4C1.1 does not reference "crimes of violence" or "violent felony" as those terms are used by, and specifically defined by, the United States Code or the Sentencing Guidelines. Instead, USSG §4C1.1(a)(3) relates to conduct—specifically, using "violence or credible threats of violence in connection with the offense."

First, we agree with Probation's conclusion that Mr. Baker's offense did not involve violence or credible threats of violence because there was no "physical pain" or "injury" to the victim. *See PSR Addendum.* In short, there was no physical force used by Mr. Baker when touching the victim's private areas of her body without consent. For those reasons, we agree with Probation's conclusion that Mr. Baker's offense conduct would not preclude him from qualifying for the Zero Point Offender reduction in accordance with USSG § 4C1.1(a)(3).

Next, the cases that the government relies on each involve interpreting "violent felony" or "crime of violence" as defined by the United States Code and the Sentencing Guidelines. Additionally, the cases that the government relies on analyze the elements of the offense of conviction to determine whether there exists a categorical match with the "violent felony" definition. Specifically, each of the cases relied on by the government involve a "force" clause for the offense. Here, Section 4C1.1(a)(3) does not reference "violent felony" or "crime of violence," terms that have statutory definitions

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

under the Armed Career Criminal Act and under 18 U.S.C. § 16 respectively. Instead, USSG § 4C1.1 focuses on conduct that goes beyond the statutory elements of the offense—being whether the overall offense conduct further involved violence or credible threats of violence.

The Sentencing Guidelines do not define the term "violence." In fact, the language used in Section 4C1.1 points to a different application of "violence" than the concepts of "violent felony" or "crime of violence" as defined by statute or the sentencing guidelines and interpreted by caselaw that the government is relying on. Additionally, the phrase "in connection with the offense" suggests an examination of conduct that goes beyond the elements of the statute. Without a definition of "violence" from the Sentencing Commission, the Court should turn to contemporary dictionaries to fill the gap. *United States v. Bauer*, 2024 WL 324234 (D.D.C. 2024). The District Court of the District of Columbia, for example, addressed this same issue as to the meaning of "violence" as used in Section 4C1.1(a)(3) for a "January 6th" criminal case where the defendant assaulted a police officer and threatened to hang an elected lawmaker who had an office nearby. *Id.* at 2. The district court accepted the following definition under this Guideline based on the Black's Law Dictionary definition: "Contemporary dictionaries define 'violence' as '[t]he use of physical force' typically 'accompanied by fury, vehemence, or outrage' and 'unlawfully exercised with the intent to harm' . . . Or, similarly, 'violence' is the 'exertion of any physical force so as to injure or abuse [citing Webster's definition].'" *Id.*

In the instant case, the government will argue that Mr. Baker used violence when he touched the victim's breast, buttocks, and genitals without her consent. However, this conduct does not fit within the common definition of "violence" as there is no evidence that Mr. Baker used any physical force with the intent to cause injury when he touched the victim. Simply put, the fact that Mr. Baker touched the victim in her private

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

areas does not rise to the level of violent conduct when applying the conventional definition of violence.

For these reasons, Mr. Baker is eligible for the Zero Point Offender reduction. Should this Court agree with the calculations of both the defense and Probation, Mr. Baker's total offense level would be at Level 10. With zero criminal history, his range is 6 to 12 months in custody.

### III.    THE SECTION 3553(A) FACTORS

#### A.    The Nature and Circumstances of the Offense and Sufficient Punishment that is not Greater than Necessary.

Mr. Baker was convicted of touching E.C., without consent, on her breast, inner thigh, buttocks, and vagina. E.C. testified that the touching was over her clothes and that at no point did Mr. Baker touch her bare skin. While the timing of how long the touching occurred was a disputed fact at trial, E.C. testified that the touching lasted for a couple minutes. Regardless, there were no facts surrounding the touching that would support any aggravating upward adjustments. In fact, neither Probation nor the government is recommending any upward adjustments in this case, simply because there are no aggravating facts to support any enhancements.

Yet despite there being no aggravators, there is a recommendation from Probation that this Court sentence Mr. Baker to the statutory maximum period authorized by law. Such a sentence, if imposed, would be greatly disproportionate under the circumstances, particularly since Mr. Baker is a first-time offender with no criminal history whose guideline range falls within Zone B of the sentencing table.

When crafting guidelines, the duties of the United States Sentencing Commission are listed in 28 U.S.C. § 994. Specifically, subjection (j) directs the commission as follows:

> The commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence *other than imprisonment* in cases

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

> in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

28 U.S.C. § 994(j) (emphasis added).

With a guideline sentencing range within Zone B of the sentencing table, the Sentencing Commission recommends that the sentencing court consider a minimum term that may be satisfied by a term of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment provided that at least one month be satisfied by imprisonment. USSG § 5C1.1(c)(2). Of course, the Sentencing Commission recognizes other sentencing alternatives that could include a sentence of probation or a pure sentence of imprisonment. USSG § 5C1.1(c)(1) & (c)(3). However, for Zero Point Offenders, such as Mr. Baker, who fall within Zone B, "a sentence other than a sentence of imprisonment, in accordance with [USSG § 5C1.1(c)], is generally appropriate." *See* Commentary Application Note 10, referencing 28 U.S.C. § 994(j).

Here, the offense occurred toward the end of the flight, being approximately 20 to 30 minutes from landing. There was no testimony to support any claim that Mr. Baker may have used physical restraint. Had there been such testimony, surely the government and/or Probation would have sought an enhancement in accordance with USSG § 3A1.3 (providing +2 upward adjustment if the victim was physically restrained). Additionally, there was no testimony that E.C. qualified as a vulnerable victim in accordance with USSG § 3A1.1(b) (providing a +2 upward adjustment if the defendant knew, or should have known, that E.C. was a "vulnerable victim.").

Finally, counsel is unaware of any similarly situated case involving abusive sexual contact where the sentencing court imposed the statutory maximum, let alone a sentence above the guideline range. For example, recent cases in this district resulted in the following sentences: In *United States v. Jurkovic,* CR23-001-RSL (a case that went

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

to trial and involved a 16-year-old victim), the district court sentenced the defendant to 8 months in custody. In *United States v. Brick*, CR23-052-JHC, (a case where the defendant forced the victim's hand onto his genitals while groping her breast), the district court sentenced the defendant to six months in custody. And, in *United States v. Kumar*, CR24-041-JNW, (a trial case where the court found evidence supporting victim vulnerability) the sentencing court imposed a 15-month sentence being at the low end of the range even with the victim being under the age of 18. In other words, even with aggravating circumstances, we have not seen a sentence outside the advisory range, let alone at or near the statutory maximum.

The government will likely argue, as pointed out by Probation, that in 2004 Mr. Baker attempted to touch a 15-year-old member of his church group (identified as MV1). As such, the government may argue that the Court should consider this past incident to support a sentence above the guideline range. Over the defendant's objection, MV1 testified that Mr. Baker attempted to touch her private areas without consent at a pool party twenty years ago. As the Court heard at trial, there was an investigation into the incident leading to no charges. Even though this Court permitted the government to introduce evidence of this alleged incident under FRE 413, the fact remains that this evidence is not considered "relevant conduct" for sentencing purposes in accordance with USSG § 1B1.3. In fact, Probation notes at paragraphs 15 through 19 in the final PSR, that this alleged incident from 20 years ago is "not part of Relevant Conduct." Accordingly, this irrelevant conduct for sentencing purposes should not factor into calculating Mr. Baker's guideline range per the directives of Section 1B1.3—specifically, Section 1B1.3 outlines the "factors that determine the Guideline Range"—being the relevant conduct.

While Probation's sentencing recommendation references the allegations of MV1, Probation nevertheless agrees that the advisory range is not impacted by these

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

allegations. Since these allegations remain contested, with no formal charges or adjudication to follow, due process requires that the sentencing determination should focus exclusively on the offense of conviction and not on what may, or may not have, happened 20 years ago. Given that there are no aggravating circumstances in this case, together with Mr. Baker being a first-time offender qualifying for the Zero Point Offender reduction, a split sentencing of four months of imprisonment together with two months of home confinement would be sufficient and not greater than necessary. A sentence above the guidelines, let alone a statutory maximum sentence, would be unprecedented and greater than necessary under these circumstances.

### B.   The Personal History and Characteristics of Justin Baker.

Those who know Mr. Baker were shocked when they learned about his current situation. Nevertheless, many in his community are still willing to show their support as they still believe he is a respectful and caring person with a "heart of gold," as described by one person who knows him well. Ex. 2. One of Mr. Baker's friends, who views him as a brother, describes Mr. Baker as a hard worker who truly shines as a father to his young kids. Ex. 3. Mr. Baker's mother describes him as "kind, considerate, compassionate and caring." Ex. 4. Furthermore, she has observed that Mr. Baker has learned from his mistakes while seeking help through counseling for self-improvement. *Id.* Finally, Mr. Baker's father describes how his son can be trusted to follow all court orders, as he had done while released on an appearance bond. Ex. 5. In fact, Mr. Baker's father served as his chaperone during the flights from Southern California to court in Seattle. *Id.* Mr. Baker followed all the rules of his pre-trial release, he made it to court on time, and he showed utmost respect to all parties and witnesses during the trial. *Id.*

Mr. Baker understands that he is to blame for the break-up of his marriage. Ex. 1. He acknowledges his flaws and failures as a husband and accepts the reality that

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

he caused his family to break apart. *Id.* And for Mr. Baker, that amounts to immense punishment. *Id.* That said, he will continue to be a devoted father his children no matter what. *Id.* And once released from custody, he will continue with counseling and will follow through with all conditions of supervision, just as he had done during his pre-trial release. *Id.*

      **C.**    **The need for the Sentence to Afford Treatment and Rehabilitation in the Most Effective Manner.**

A conviction for abusive sexual contact will entail special conditions of supervision similar to some of the most serious sex offense convictions. In addition to Mr. Baker having to register as a sex offender for at least 10 years, he will also be required to participate in sexual deviancy treatment. *See* special conditions 3 & 4. Additionally, he will be required to follow lifestyle restrictions as recommended by his therapist or counselor. *See* special condition 5. Finally, Mr. Baker will be ordered to submit to periodic polygraph testing to ensure that he follows his treatment program. Among other special conditions that are tailored to those convicted of sex-related offenses, these special conditions are more onerous than what other offenders typically face after being released from custody.

Mr. Baker submitted a letter to this court after reflecting on this case while incarcerated at the FDC. Ex. 1. He explained that he is committed to treatment and further counseling once he is released from custody. *Id.* In addition, this Court has support letters from others who have participated in counseling with Mr. Baker, and each have expressed how committed Mr. Baker is to treatment and self-improvement. Exhibits 2, 6, & 7. With the support from those in his group, from his counselor, and from his parents, Mr. Baker will focus on treatment. For these reasons, further incarceration is not necessary. For a defendant in Zone B, Mr. Baker has served a sufficient period in custody to meet the sentencing goals of Section 3553(a). Now, the

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100

next part of his sentence should focus on his treatment needs. Alternative confinement in the form of house arrest moving forward as a condition of supervised release will certainly achieve that goal.

IV. **CONCLUSION**

For these reasons, this Court should sentence Mr. Baker to four months in custody followed by two months of house arrest as a special condition of supervised release. Because Mr. Baker is committed to treatment, including sexual deviancy treatment, he does not oppose any of the proposed special conditions from U.S. Probation.

DATED this 11th day of February 2025.

Respectfully submitted,

s/ *Jesse Cantor*
s/ *Colleen Fitzharris*
Assistant Federal Public Defenders
Attorney for Justin Baker

DEFENSE SENTENCING MEMORANDUM
(*United States v. Baker*, CR24-058-JCC) - 11

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100